STATE OF NORTH CAROLINA v. GEORGE A. BRUTON AND WILLIE TOWNSEND

No. 416A95

(Filed 6 September 1996)

**1. Evidence and Witnesses § 1482 (NCI4th)— first-degree murder—ammunition found in defendant's home—probative value lacking for some—overwhelming weight of evidence—no error**

The trial court did not err in a noncapital first-degree murder prosecution by admitting into evidence items seized from defendant Bruton's residence, including numerous nine-millimeter, twenty-two-caliber, and forty-caliber cartridges, shotgun shells, gun boxes, and a twenty-two-caliber gun. The evidence at trial did not link any of the items seized at defendant Bruton's residence with the killing of the victim; however, the extensive inventory of nine-millimeter cartridges found at defendant Bruton's residence supported the State's theory that defendant Bruton owned a nine-millimeter weapon, used it in the killing of the victim, and disposed of it after the killing. Assuming that the other items did not have any probative value, admitting the items was harmless in light of the overwhelming evidence of defendant's guilt.

**Am Jur 2d, Homicide § 414.**

**2. Homicide § 256 (NCI4th)— noncapital first-degree murder—premeditation and deliberation—denial of motion to dismiss**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant Bruton's motion to dismiss the charge at the close of all the evidence; defendant waived his right to appeal the denial of his motion to dismiss at the close of the State's evidence by presenting evidence. Defendant Bruton confronted the victim armed with a loaded, semiautomatic pistol, began an argument, intentionally deceived the victim by telling the victim he did not have a gun, pointed his gun at the victim when the victim attempted to flee, shouted an obscenity-laced statement, and shot the victim in the back.

**Am Jur 2d, Homicide § 425.**

**Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**3. Homicide § 285 (NCI4th)— second-degree murder—sufficiency of evidence**

The evidence in a noncapital first-degree murder prosecution was sufficient to support defendant Townsand's conviction of second-degree murder where the evidence is uncontested that defendant Townsend was present at the scene of the crime and substantial evidence supported a finding that he acted in concert with defendant Bruton pursuant to a common plan or purpose to murderously assault the victim. The evidence at trial permitted the jury to find that either defendant acted with premeditation and deliberation, but did not require that the jury either make that finding or find defendants not guilty.

**Am Jur 2d, Homicide § 425.**

**4. Appeal and Error § 341 (NCI4th)— first-degree murder— jury verdict—no assignment of error**

A defendant's argument concerning inconsistency in a jury verdict in a noncapital first-degree murder prosecution was not before the Supreme Court where defendant assigned error to the trial court's denial of his motion to dismiss on the ground of insufficient evidence, but did not make any assignment of error relating to his contention that the jury's verdict was inconsistent.

**Am Jur 2d, Appellate Review §§ 615, 616; Trial §§ 424-429.**

**5. Constitutional Law § 293 (NCI4th)— first-degree murder— counsel representing both defendants—discrepancy in testimony—no denial of effective assistance of counsel**

The rights of defendant Townsend to effective assistance of counsel and due process of law were not violated because both defendants were represented by the same attorney at a noncapital first-degree murder trial. Although defendant Townsend contends that an actual conflict of interest arose when his counsel failed to impeach testimony by defendant Bruton which was unfavorable to Townsend, Townsend did not show that counsel's failure to challenge defendant Bruton's testimony actually impaired Townsend's defense because questioning either defendant further about the discrepancy in their testimony may have only highlighted Townsend's role in shooting the victim.

**Am Jur 2d, Criminal Law §§ 754-757.**

STATE v. BRUTON

[344 N.C. 381 (1996)]

Circumstances giving rise to conflict of interest between or among criminal codefendants precluding representation by same counsel. 34 ALR3d 470.

Circumstances giving rise to prejudicial conflict of interests between criminal defendant and defense counsel—state cases. 18 ALR4th 360.

Circumstances giving rise to prejudicial conflict of interests between criminal defendant and defense counsel—federal cases. 53 ALR Fed. 140.

6. **Homicide § 357 (NCI4th)— first-degree murder—refusal to instruct on involuntary manslaughter**

There was no error in the noncapital first-degree murder prosecution of two defendants where defendant Townsend contended that the trial court erred by refusing to instruct on involuntary manslaughter. The jury could not have found him guilty of involuntary manslaughter even if he committed a culpably negligent act by discharging his weapon because the evidence at trial was undisputed that defendant Bruton intentionally fired the shot which killed the victim. Defendant Townsend's discharge of his weapon did not proximately cause the victim's death.

Am Jur 2d, Homicide § 531.

7. **Criminal Law § 1150 (NCI4th)— second-degree murder—aggravating factor—use of weapon normally hazardous to more than one person—nine-millimeter semiautomatic pistol—not element of offense**

The trial court did not err in a noncapital first-degree murder prosecution in which defendant Townsend was convicted of second-degree murder by finding as to defendant Townsend the aggravating factor that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person, and the evidence essential to prove this factor was not necessary to prove an essential element of second-degree murder on the basis of acting in concert. The evidence showed that defendant Townsend fired more than one shot from a nine-millimeter, semiautomatic pistol, which in its normal use is hazardous to the lives of more than one person, in the direction of the victim and another person. In meeting its burden of proof with respect to second-degree murder based on acting in con-

STATE v. BRUTON

[344 N.C. 381 (1996)]

cert, the State was not required to establish that defendant Townsend knowingly created a great risk of death to more than one person or that he did so by using a weapon which in its normal use is hazardous to the lives of more than one person. N.C.G.S. § 15A-1340.4(a)(l)(g).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

Appeal as of right by defendant Bruton pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Freeman, J., at the 4 April 1995 Criminal Session of Superior Court, Forsyth County, upon a jury verdict finding defendant Bruton guilty of first-degree murder. Defendant Townsend's motion to bypass the Court of Appeals as to his conviction for second-degree murder was allowed by this Court 2 October 1995. Heard in the Supreme Court 8 April 1996.

*Michael F. Easley, Attorney General, by Norma S. Harrell, Special Deputy Attorney General, for the State.*

*Lisa S. Costner for defendant-appellant Bruton.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Charlesena Elliott Walker, Assistant Appellate Defender, for defendant-appellant Townsend.*

PARKER, Justice.

Defendants were tried noncapitally on indictments charging them with the first-degree murder of Kurtis Legrant Mobley ("victim"). The jury returned verdicts finding defendant George A. Bruton guilty of first-degree murder and defendant Willie Townsend guilty of second-degree murder. The trial court sentenced defendant Bruton to life imprisonment and defendant Townsend to twenty years' imprisonment. For the reasons discussed herein, we uphold the convictions and sentences of both defendants.

The evidence tended to show that shortly after midnight on 30 March 1994, the victim and Derrick York walked towards an apartment building at 2783 Piedmont Circle in Winston-Salem. The victim shouted an obscenity [f--- you, bitch] at defendant Bruton's girlfriend, who was apparently sitting in or standing by an apartment

**STATE v. BRUTON**

[344 N.C. 381 (1996)]

window. The victim and York then walked to the back of the apartment building.

Defendant Bruton located defendant Townsend and told Townsend that two "niggers" were at the back door. Defendant Bruton then went outside with a concealed nine-millimeter, semiautomatic pistol and confronted the victim. A heated argument ensued. The victim told defendant Bruton to put down his gun and fight. Defendant Bruton responded that he did not have a gun and pulled up his shirt in a manner suggesting that he was not armed.

When defendant Bruton told defendant Townsend that two "niggers" were at the back door, defendant Townsend retrieved his nine-millimeter, semiautomatic pistol and went out the back door. Defendant Townsend stood on the back porch and watched defendant Bruton argue with the victim. After a short period of time defendant Townsend shouted an obscenity ["f--- that" or "f--- that, let's do it"] and began firing his gun in the direction of the victim, York, and Holly Farley. When defendant Townsend fired his weapon, defendant Bruton also began shooting. As the victim attempted to flee, defendant Bruton pointed his gun at the victim; shouted "f--- that, you don't f--- with her"; and shot the victim in the back. This shot caused the victim's death.

After defendant Bruton shot the victim, Derrick York attempted to run. Defendant Bruton fired several shots in York's direction and gave chase. Defendant Bruton caught York, hit him on the head with the gun, and began kicking him. As defendant Bruton struck and kicked York, York saw defendant Townsend kicking the victim. Both defendants subsequently fled from the scene and disposed of their weapons.

Holly Farley, the victim's girlfriend, testified that she saw defendant Townsend showing his gun to a crack cocaine addict a short time before the shooting. Farley testified that defendant Townsend "cocked the gun back" and told her that "he don't cock it back unless he was going to use it."

Defendants' evidence suggested that the victim had a reputation for violence, that the argument started when the victim shouted an obscenity at defendant Bruton's girlfriend, and that defendants acted in self-defense. Defendant Bruton testified that he had seen the victim point a gun at his house on the day prior to the killing, that the victim had been threatening him and talking about his girlfriend all day on

the day prior to the killing, and that he believed that the victim "ran with a gang." Defendant Bruton stated that he thought the victim had a gun and that he shot the victim because he was afraid that the victim was reaching for it. Defendant Townsend testified that the victim and York had threatened him prior to the killing and that he had been told that the victim and York were planning on "jumping him." According to defendant Townsend, he fired his weapon only because York "pulled out a gun." Defendant Townsend testified that he fired only one shot and that this shot went into the ground.

Additional facts will be presented as necessary to address specific issues.

## COMMON ISSUE

[1] In respective assignments of error, defendants contend that the trial court erred by admitting into evidence items seized at 2783 Piedmont Circle, which was defendant Bruton's temporary residence at the time of the killing. The contested items include numerous nine-millimeter, twenty-two-caliber, and forty-caliber cartridges; shotgun shells; gun boxes; and a twenty-two-caliber gun. Defendants argue that these items were irrelevant in that the State's evidence failed to link any of the items to the crime.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Generally, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1992). This Court has consistently stated that "in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994).

"As a general rule weapons may be admitted in evidence 'where there is evidence tending to show that they were used in the commission of a crime.' " *State v. Crowder*, 285 N.C. 42, 46, 203 S.E.2d 38, 41-42 (1974) (quoting *State v. Wilson*, 280 N.C. 674, 678, 187 S.E.2d 22, 24 (1972)), *death sentence vacated*, 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). The evidence at trial did not link any of the items seized at defendant Bruton's residence with the killing of the victim. However, the extensive inventory of nine-millimeter cartridges found at defendant Bruton's residence supported the State's theory that defendant Bruton owned a nine-millimeter weapon, used it in the killing of the

victim, and disposed of it after the killing. For this reason the nine-millimeter cartridges were relevant and admissible. *See State v. Levan*, 326 N.C. 155, 168, 388 S.E.2d 429, 436 (1990).

Assuming *arguendo* that the other items seized at defendant's residence did not have any probative value, the error in admitting these items was harmless. The items seized at defendant Bruton's residence were not needed to link either defendant to this crime. Eyewitness testimony tended to show that both defendants were present at the crime scene, that defendant Townsend fired the first shot, and that defendant Bruton shot and killed the victim. At trial defendant Townsend testified that he fired the first shot, and defendant Bruton admitted that he subsequently fired a shot at the victim. In light of the overwhelming evidence of defendants' guilt, we conclude that defendants cannot show that, had the contested items not been admitted into evidence, a different result would have been reached at trial. *See* N.C.G.S. § 15A-1443(a) (1988); *State v. Sierra*, 335 N.C. 753, 762, 440 S.E.2d 791, 796 (1994). Accordingly, this assignment of error is overruled.

## DEFENDANT BRUTON

[2] In his next assignment of error, defendant Bruton contends that the trial court erred in denying his motions to dismiss the charge of first-degree murder at the close of the State's evidence and at the close of all evidence. Defendant Bruton argues that the evidence is insufficient to support a finding of premeditation and deliberation.

By presenting evidence defendant waived his right to appeal the denial of his motion to dismiss at the close of the State's evidence. *State v. Mash*, 328 N.C. 61, 66, 399 S.E.2d 307, 311 (1991). Accordingly, we review defendant's assignment of error only with respect to the trial court's ruling denying his motion to dismiss at the close of all the evidence.

In ruling on a motion to dismiss a first-degree murder charge, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *State v. Jackson*, 317 N.C. 1, 22, 343 S.E.2d 814, 827 (1986), *judgment vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987). Substantial evidence must be introduced tending to prove the essential elements of the crime charged and that defendant was the perpetrator. *Id.* The evidence may contain contradictions or discrepancies; these are for the

jury to resolve and do not require dismissal. *Id.* at 22-23, 343 S.E.2d at 827.

*State v. Truesdale*, 340 N.C. 229, 234, 456 S.E.2d 299, 302 (1995).

First-degree murder "is the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Fleming*, 296 N.C. 559, 562, 251 S.E.2d 430, 432 (1979). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836.

"Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence." *State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). Circumstances to be considered in determining whether a killing was committed with premeditation and deliberation include the following:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and rendered helpless; and (6) evidence that the killing was done in a brutal manner.

*Id.* at 59, 337 S.E.2d at 823.

When viewed in the light most favorable to the State, the evidence supported submitting first-degree murder to the jury. Armed with a loaded, semiautomatic pistol, defendant Bruton confronted the victim, began an argument, and intentionally deceived the victim by telling the victim he did not have a gun. When the victim attempted to flee, defendant Bruton pointed his gun at the victim, shouted an obscenity-laced statement, and shot the victim in the back. This evi-

dence was sufficient to permit the jury to conclude that defendant Bruton formed an intent to kill before shooting the victim and carried out that intent in a cool state of blood. The jury was not required to believe that defendant Bruton acted out of fear of being shot or that the words or conduct of the victim aroused sufficient passion to negate deliberation. Accordingly, this assignment of error is overruled.

## DEFENDANT TOWNSEND

[3] By an assignment of error, defendant Townsend contends that the trial court erred in denying his motion to dismiss at the close of all evidence. Defendant Townsend argues that there is no evidence that defendant acted together with another to commit a second-degree murder. He argues that the evidence only supported a verdict of either first-degree murder or not guilty. We disagree.

Second-degree murder "is the unlawful killing of a human being with malice but without premeditation and deliberation." *Fleming*, 296 N.C. at 562, 251 S.E.2d at 432. Under the principle of acting in concert, a defendant

> may be found guilty of an offense if he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime.

*State v. Wilson*, 322 N.C. 117, 141, 367 S.E.2d 589, 603 (1988). A jury may find a defendant guilty of second-degree murder on the basis of acting in concert. *See State v. Williams*, 299 N.C. 652, 654-57, 263 S.E.2d 774, 776-78 (1980).

The evidence is uncontested that defendant Townsend was present at the scene of the crime, and substantial evidence supported a finding that he acted in concert with defendant Bruton pursuant to a common plan or purpose to murderously assault the victim. After defendant Bruton told defendant Townsend that two "niggers" were at the back door, Townsend followed defendant Bruton outside and observed the argument between Bruton and the victim. Defendant Townsend subsequently shouted "f--- that" or "f--- that, let's do it" and fired his weapon. When defendant Townsend fired his weapon, defendant Bruton began shooting and shortly thereafter fired the shot which killed the victim. After the shooting defendant Townsend kicked the victim as he lay on the ground. This evidence was suffi-

cient to show that defendant Townsend acted in concert with defendant Bruton pursuant to a common plan or purpose to assault the victim with murderous intent.

Defendant Townsend argues that the evidence supported only verdicts of first-degree murder or not guilty. We note that defendant did not object to the submission of second-degree murder at trial. The evidence at trial permitted the jury to find that either defendant acted with premeditation and deliberation, but it did not require that the jury either make this finding or find defendants not guilty. Defendant Townsend testified that he fired one shot into the ground when Derrick York "pulled out a gun." Defendant Bruton testified that he shot "at" the victim because he was afraid the victim was going to shoot him. The shooting followed a heated argument between the victim and defendant Bruton, and the evidence suggested that the parties exchanged "fighting words" during this argument. The evidence supporting premeditation and deliberation was either circumstantial or contested. Substantial evidence at trial supported each and every element of the crime of second-degree murder, and the evidence permitted the jury to find that defendant Townsend committed this crime on the basis of acting in concert. Accordingly, the trial court did not err in denying defendant Townsend's motion to dismiss.

[4] Defendant Townsend further argues that the jury determined that he did not share a common plan to commit a second-degree murder by acquitting him of first-degree murder. He argues that the jury's determination that no plan existed as to first-degree murder is inconsistent with its finding that he acted in concert with Bruton pursuant to a common plan to commit second-degree murder. Defendant assigned error to the trial court's ruling denying his motion to dismiss on the ground that the evidence did not support each and every element of the offense charged. Defendant did not make any assignment of error relating to his contention that the jury's verdict was inconsistent. Accordingly, defendant's argument is not before this Court. N.C. R. App. P. 10(a).

This assignment of error is overruled.

[5] By another assignment of error, defendant Townsend contends that his rights to effective assistance of counsel and due process of law were violated because both defendants were represented by the same attorney at trial. Prior to trial the trial court conducted a hearing on the possible conflict of interest. During this hearing defendants' counsel stated that no conflict of interest existed. The trial court

STATE v. BRUTON

[344 N.C. 381 (1996)]

informed both defendants that a conflict could possibly arise and that each defendant had a right to his own lawyer. The court explained that a future course of action might be to one defendant's advantage and to the other defendant's disadvantage. Both defendants assented to the joint representation. At the conclusion of the hearing, the trial court found that there was no actual conflict and that both defendants voluntarily, knowingly, and intelligently waived the right to separate counsel.

Defendant Townsend nevertheless contends that an actual conflict of interest arose at trial and that the trial court should have declared a mistrial when the conflict became apparent. A defendant in a criminal case has a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692 (1984); *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985). The right to effective assistance of counsel includes the "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 67 L. Ed. 2d 220, 230 (1981). In order to establish a violation of this right, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346-47 (1980); *accord State v. Walls*, 342 N.C. 1, 39-40, 463 S.E.2d 738, 757 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996).

Permitting a single attorney to represent two or more codefendants in the same trial is not a *per se* violation of the right to effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 482, 55 L. Ed. 2d 426, 433 (1978). Accordingly, the mere possibility of conflict inherent in counsel's joint representation of defendants is not sufficient to impugn defendant Townsend's criminal conviction. *See Cuyler*, 446 U.S. at 350, 64 L. Ed. 2d at 348; *Walls*, 342 N.C. at 40, 463 S.E.2d at 758.

Defendant Townsend argues that his counsel failed to impeach testimony by defendant Bruton which was unfavorable to Townsend. The record shows that defendant Bruton testified on cross-examination that defendant Townsend yelled "f— that, let's do it" before firing his weapon. Defendant Townsend subsequently denied using the exact words attributed to him by Bruton. Defendant Townsend contends that defendant Bruton's testimony tended to support the State's theory that Townsend was involved in a plan to shoot the victim or that his statement was a signal to Bruton to begin shooting. Townsend

STATE v. BRUTON

[344 N.C. 381 (1996)]

argues that counsel declined to impeach defendant Bruton because he did not want to challenge Bruton's credibility.

We conclude that defendant Townsend has not shown that counsel's failure to challenge defendant Bruton's testimony actually impaired Townsend's defense. Defendant Bruton testified that defendant Townsend's statement was not a signal to begin shooting. In his testimony defendant Townsend denied only using the exact words attributed to him by defendant Bruton. He admitted making some remarks, admitted firing his weapon after doing so, and did not specifically deny shouting an obscenity. The State presented eyewitness testimony that defendant Townsend shouted an obscenity before firing his weapon; hence, questioning either defendant further about the discrepancy in their testimony may have only highlighted Townsend's role in shooting the victim.

The essence of both defendants' testimony was that the victim provoked the confrontation and that they acted in self-defense. Defense counsel's cross-examination of witnesses, presentation of defendants' evidence, and jury argument supported this testimony. The United States Supreme Court has recognized that " '[a] common defense often gives strength against a common attack.' " *Holloway*, 435 at 482-83, 55 L. Ed. 2d at 433 (quoting *Glasser v. United States*, 315 U.S. 60, 92, 86 L. Ed. 680, 710-11 (1942) (Frankfurter, J., dissenting)). We conclude that defendant Townsend has failed to show that an actual conflict of interest adversely affected his lawyer's performance. This assignment of error is overruled.

[6] By his next assignment of error, defendant Townsend contends that the trial court erred by refusing to instruct the jury on involuntary manslaughter. A trial judge must instruct the jury as to a lesser-included offense when there is evidence from which the jury could find that the defendant committed that offense. *State v. Redfern*, 291 N.C. 319, 321, 230 S.E.2d 152, 153 (1976), *overruled on other grounds by State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993). "Involuntary manslaughter is the unlawful killing of a human being without malice, without premeditation and deliberation, and without intention to kill or inflict serious bodily injury." *State v. Powell*, 336 N.C. 762, 767, 446 S.E.2d 26, 29 (1994). We have also defined involuntary manslaughter as "the unintentional killing of a human being without malice proximately caused by (1) an unlawful act [neither] amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission." *Id.*

Defendant argues that his conduct in discharging his weapon amounted to culpable negligence. Even if defendant Townsend committed a culpably negligent act by discharging his weapon, the jury could not have found Townsend guilty of involuntary manslaughter because this act did not result in the victim's death. As defendant Townsend acknowledges in his brief, the evidence at trial was undisputed that defendant Bruton intentionally fired the shot which killed the victim. Defendant Townsend's act in discharging his weapon did not proximately cause the victim's death. Accordingly, we conclude that the trial court correctly declined to instruct the jury on involuntary manslaughter. This assignment of error is overruled.

[7] Defendant Townsend next assigns error to the finding of the aggravating factor that "defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C.G.S. § 15A-1340.4(a)(1)(g) (1988) (repealed effective 1 October 1994; reenacted as N.C.G.S. § 15A-1340.16(d)(8) effective 1 October 1994). Defendant argues that the evidence was insufficient to support a finding that he knowingly created a great risk of death to more than one person and that evidence essential to prove this factor was necessary to prove an essential element of second-degree murder on the basis of acting in concert.

To find the aggravating factor at issue here, "the sentencing judge must focus on two considerations: (1) whether the weapon in its normal use is hazardous to the lives of more than one person; and (2) whether a great risk of death was knowingly created." *State v. Rose*, 327 N.C. 599, 605, 398 S.E.2d 314, 317 (1990); *accord State v. Carver*, 319 N.C. 665, 667, 356 S.E.2d 349, 351 (1987). The evidence in this case tended to show that defendant Townsend fired a nine-millimeter, semiautomatic pistol. A semiautomatic pistol is normally used to fire several bullets in rapid succession and in its normal use is hazardous to the lives of more than one person. *See Carver*, 319 N.C. at 667-68, 356 S.E.2d at 351. The State's evidence suggested that defendant Townsend intentionally fired more than one shot in the direction of the victim, Holly Farley, and Derrick York. Accordingly, the evidence permitted the trial court to find that defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person.

Defendant Townsend also argues that the evidence used to prove this factor was necessary to prove second-degree murder on the basis

of acting in concert. "Evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation." N.C.G.S. § 15A-1340.4(a)(1); *State v. Wilson*, 338 N.C. 244, 257, 449 S.E.2d 391, 399 (1994). Defendant Townsend argues that the evidence that he fired a semiautomatic pistol was necessary to prove that he acted in concert with defendant Bruton. We disagree.

This Court has recognized that the statutory factors in N.C.G.S. § 15A-1340.4(a)(1) "contemplate a duplication in proof without violating the proscription that 'evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation.' " *State v. Thompson*, 309 N.C. 421, 422 n.1, 307 S.E.2d 156, 158 n.1 (1983) (quoting N.C.G.S. § 15A-1340.4(a)(1)). Discrete evidence in this case supported both acting in concert and the aggravating factor. In meeting its burden of proof with respect to second-degree murder on the basis of acting in concert, the State was not required to establish that defendant Townsend knowingly created a great risk of death to more than one person or that he did so by using a weapon which in its normal use is hazardous to the lives of more than one person. We conclude, therefore, that the trial court did not err in finding the aggravating factor. This assignment of error is overruled.

For the foregoing reasons defendants received a fair trial free from prejudicial error.

NO ERROR.