STATE OF NORTH CAROLINA
v.
SAQUAN TREAY FACYSON

No. COA12-1300

Filed 4 June 2013

**1. Homicide—second-degree murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder. The State presented substantial circumstantial evidence of each element of second-degree murder in that defendant either acted alone or with others in the shooting and killing of the victim.

**2. Sentencing—aggravating range—same evidence for underlying offense**

The trial court erred in a second-degree murder case by sentencing defendant in the aggravating range. The evidence supporting the aggravating factor was the same evidence necessary to support an

**STATE v. FACYSON**

[227 N.C. App. 576 (2013)]

element of the underlying offense. The judgment was reversed and remanded for a new sentencing hearing.

Appeal by defendant from judgment entered 23 March 2012 by Judge H.W. Hight in Durham County Superior Court. Heard in the Court of Appeals 11 March 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General Philip A. Lehman, for the State.*

*Sue Genrich Berry for defendant.*

HUNTER, Robert C., Judge.

Saquan Treay Facyson ("defendant") appeals from the judgment entered after a jury found him guilty of second-degree murder. Defendant argues the trial court erred by denying his motion to dismiss the charge for insufficient evidence. Defendant also argues that the trial court erred in sentencing him in the aggravated range because the evidence supporting the aggravating factor was the same evidence necessary to support an element of the underlying offense. After careful review, we conclude the trial court did not err in denying the motion to dismiss. Due to ambiguity in the verdict, however, we reverse the judgment and remand for a new sentencing hearing.

## Background

On 19 April 2010, David Andrews was working at a restaurant in Durham, North Carolina when he borrowed a red Ford Fusion from his co-worker so that he could drive to buy some drugs. While borrowing the car, Andrews ran out of money to buy drugs and allowed other people to use the car in exchange for drugs. Andrews loaned the car to Demetrius Lloyd, Neiko Malloy, and defendant for two hours in exchange for a rock of crack cocaine. The men did not return the car to Andrews, but Andrews testified that he saw defendant driving the car later in the day.

At approximately noon on 20 April 2010, Pebbles Kersey walked out of her Durham apartment to retrieve her mail. Jermaine Jackson was standing nearby in a recreational park. As Kersey was walking to her mailbox, she saw a red car approaching with three men in the car. In addition to the driver, the second occupant was in the front passenger seat, and the third was in the back seat; all three occupants were wearing red bandanas. At that moment, Jackson yelled for Kersey to "get

down," and Kersey saw the man in the back seat shoot a gun into the park. Multiple shots were fired. Jackson was struck in the face and died from his injuries.

Dennis Diaz was driving by the park and witnessed the shooting. While stopped at a red light, Diaz saw a sedan with three men, two of which were leaning out of the passenger side pointing guns in the direction of the park. He saw Kersey drop to the ground and then immediately heard shots fired. The car from which the shots were fired left the scene. The police later recovered twelve bullet casings from the scene of the shooting. Eight of the casings were from 9 millimeter bullets and four of the casings were from .380 bullets.

At approximately 12:30 p.m. that day, the manager of an apartment complex, Rahjohn Baldwin, called the police to report a suspicious vehicle, a red Ford Fusion, parked in the parking lot of the apartment complex. While Baldwin was on the phone with the police, he observed a gray sedan occupied by four individuals enter the parking lot. Although Baldwin did not know the occupants, they were Lloyd, Malloy, defendant, and a man named Willie Jackson. The men exited the gray sedan and walked toward the red Ford. Baldwin told the men they had to leave, and they began walking away from the red Ford.

A resident of the apartment complex, Andre Jiggetts, testified that he saw one of the men standing at the passenger side of the red Ford wiping the car with a t-shirt or cloth. When Baldwin told the men to leave, the man then closed the car door and walked away. Baldwin and Jiggetts then approached the red Ford to inspect the car and noticed a bullet casing resting on the windshield.

The police arrived on the scene and two of the men from the gray sedan fled on foot but were apprehended. Baldwin noticed one of the men fleeing throw something as he fled, and the police later found the keys to the red Ford in a grassy area near the parking lot. The remaining two men from the gray sedan, one of which was defendant, did not flee and were immediately detained by the police. The police found a 9 millimeter bullet casing resting on the windshield of the red Ford. The State Bureau of Investigation ("SBI") determined that the 9 millimeter casing found on the red Ford and the 9 millimeter casings found at the scene of the shooting in which Jermaine Jackson was killed were all fired from the same gun. It was also determined that the four .380 casings found at the scene of the shooting were fired from the same weapon and that Jackson was killed by a .380 caliber bullet.

The SBI tested Lloyd, Malloy, defendant, and Jackson for gunshot residue. There was no residue found on the hands of defendant, Lloyd, or Jackson. However, particles characteristic of gunshot residue were found on the hands of Malloy. Particles characteristic of gunshot residue were also found on all four of the men's clothing, including one particle on defendant's pants.

Defendant was charged with first-degree murder and accessory after the fact to first-degree murder. The jury found defendant guilty of second-degree murder. With the verdict sheet, the trial court submitted the following interrogatory to the jury:

> Do you find from the evidence beyond a reasonable doubt that the defendant joined with more than one other person in committing the offense for which you have unanimously found the [d]efendant guilty . . . and that the defendant was not charged with committing a conspiracy as to this offense?

The jury answered this interrogatory in the affirmative. The trial court based its finding of an aggravating factor for sentencing on this interrogatory. Defendant was sentenced to a term of imprisonment of 225 months to 279 months. Defendant appeals.

## Discussion

## I. Motion to Dismiss

**[1]** Defendant argues that the trial court erred by denying his motion to dismiss the charges against him as the State failed to present sufficient evidence from which a reasonable jury could find that defendant acted alone or in concert with others to murder Jermaine Jackson. We disagree.

We review the trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In doing so, we must determine " 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When considering defendant's motion to dismiss, "the

trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). "The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury for a determination of defendant's guilt beyond a reasonable doubt." *Id.*

"Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Spicer*, 50 N.C. App. 214, 221, 273 S.E.2d 521, 527, *appeal dismissed*, 302 N.C. 401, 279 S.E.2d 356 (1981). "The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions that (1) the killing was unlawful, and (2) done with malice." *Id.*

The trial court instructed the jury that it could find defendant guilty if the evidence established that defendant acted alone or with other individuals with a common plan or purpose to murder Jackson. "A defendant may be convicted of a crime under the theory of concerted action if he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Giles*, 83 N.C. App. 487, 490, 350 S.E.2d 868, 870 (1986), *disc. review denied*, 319 N.C. 460, 356 S.E.2d 8 (1987).

The evidence presented at trial established that defendant was present with two other individuals when the men borrowed the red Ford from David Andrews. The three men did not return the red Ford to Andrews, and defendant was later seen driving the car. Two witnesses to the shooting of Jackson testified that the men who fired the shots at Jackson were in a sedan, and one of the witnesses testified that the car was red. The testimony of two additional witnesses established that the red Ford borrowed from Andrews was parked in an apartment complex parking lot shortly after the shooting.

Defendant and the other two men who borrowed the red Ford returned to the car located in the parking lot. One of those men was seen wiping either the interior or the exterior of the car with a cloth or t-shirt. The keys to the red Ford were found in the grass near the parking

lot after one of the men fled from the scene and was seen throwing an object in the bushes. A bullet casing consistent with the bullets found at the scene of the murder was found on the red Ford, and particles consistent with gunshot residue were found on all four of the individuals arrested at the red Ford, including one particle on defendant's pants. Thus, the State presented substantial circumstantial evidence of each element of second-degree murder in that defendant either acted alone or with others in the shooting and killing of Jermaine Jackson. Defendant's argument is overruled.

## II. Aggravating Factor

[2] Defendant also argues that the trial court erred in sentencing him in the aggravated range of sentences because the evidence supporting the aggravating factor was the same evidence necessary to support an element of the underlying offense. We agree.

"When a defendant assigns error to the sentence imposed by the trial court, our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and sentencing hearing.'" *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15A–1444(a1) (1996)). "[A]ggravating factors must be submitted to a jury, which must determine whether the State has proven the factors beyond a reasonable doubt." *State v. Borges*, 183 N.C. App. 240, 244, 644 S.E.2d 250, 253, *disc. review denied*, 361 N.C. 570, 650 S.E.2d 816 (2007), *cert. denied*, 552 U.S. 1126, 169 L. Ed. 2d 776 (2008).

N.C. Gen. Stat. § 15A-1340.16(b) (2012) provides in part that if aggravating factors are present, and the trial court finds that aggravating factors outweigh mitigating factors, the trial court may depart from the presumptive range of sentences and impose a sentence in the aggravated range. The statute provides that the following is an aggravating factor: "The defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." *Id.* § 15A-1340.16(d)(2). However, the statute also provides that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation[.]" *Id.* § 15A-1340.16(d).

On the charge of second-degree murder, the trial court instructed the jury as follows:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the alleged date the [d]efendant, *acting either by himself or acting together with other persons,* intentionally and with malice wounded Jermaine Anthony

Jackson with a deadly weapon, thereby proximately causing his death, it would be your duty to return a verdict of guilty of second-degree murder.

(Emphasis added.) The trial court also submitted an interrogatory to the jury which asked whether the jury found beyond a reasonable doubt that defendant joined with more than one other person in committing the crime and that defendant was not charged with conspiracy. The jury answered the interrogatory in the affirmative, and the trial court applied the aggravating factor to sentence defendant in the aggravated range of sentences.

We note that defendant did not object at trial to this alleged error. Generally, by failing to make a timely objection, a defendant waives his right to raise the alleged error on appeal. N.C. R. App. P. 10(a)(1) (2012). Pursuant to N.C. Gen. Stat. § 15A-1446, however, this Court has the discretion to review defendant's argument despite his failure to preserve the issue for review. N.C. Gen. Stat. § 15A–1446(d), (d)(18) (2011) (providing that an alleged error may be reviewed despite the lack of objection before the trial court if the error alleged is that, "[t]he sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law").Accordingly, we address defendant's argument.

Defendant contends that the jury necessarily found him guilty of second-degree murder on the theory of acting in concert as there was no evidence of who fired the bullet that killed Jackson. We do not agree. The State presented sufficient evidence for the jury to determine that it was defendant's actions alone that resulted in Jackson's death, including the particle consistent with gunshot residue that was found on defendant's clothing. Therefore, it was possible for defendant to be convicted of second-degree murder without the necessity of the element of acting in concert. However, as described above, the State also presented sufficient evidence to allow the jury to conclude that defendant acted with others in committing the crime. Yet, the verdict sheet did not require the jury to indicate the theory on which it found defendant guilty. We cannot speculate as to the basis of the jury's verdict, and we must resolve the ambiguity in favor of defendant by assuming that the aggravated sentence imposed was based on the same evidence necessary to establish an element of the underlying offense. *See State v. Whittington*, 318 N.C. 114, 123, 347 S.E.2d 403, 408 (1986) (remanding for a new sentencing hearing where the verdict sheet did not specify whether the jury found the defendant guilty of first-degree kidnapping based on the theory that the victim was sexually assaulted or seriously injured, which precluded

his conviction for kidnapping and sexual offense).[1] Accordingly, we must reverse the judgment entered and remand for a new sentencing hearing without the use of the aggravating factor.

**Conclusion**

We find no error in the trial court's denial of defendant's motion to dismiss. But, we must reverse the judgment entered upon his conviction for second-degree murder and remand for a new sentencing hearing without the use of the aggravating factor.

REVERSED and REMANDED.

Chief Judge MARTIN and Judge STEPHENS concur.

---

1. *See also State v. Ford,* 162 N.C. App. 722, 592 S.E.2d 294 (No. COA03-140) (2004) (unpublished) (concluding that because the defendant was convicted of first-degree kidnapping and sexual assault and the jury verdict sheet did not specify whether the conviction for kidnapping was elevated to the first-degree based on the sexual assault of the victim, the verdict was ambiguous, and the ambiguity had to be resolved in the defendant's favor to avoid a double punishment for the sexual assault), *cert. denied,* 359 N.C. 412, 612 S.E.2d 631 (2005).