IN THE SUPREME COURT OF NORTH CAROLINA

No. 262PA13

FILED 12 JUNE 2014

STATE OF NORTH CAROLINA

v.

SAQUAN TREAY FACYSON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 743 S.E.2d 252 (2013), reversing a judgment entered on 23 March 2013 by Judge Henry W. Hight in Superior Court, Durham County, and remanding for a new sentencing hearing. Heard in the Supreme Court on 17 March 2014.

*Roy Cooper, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State-appellant.*

*Sue Genrich Berry for defendant-appellee.*

BEASLEY, Justice.

The sole issue in this case is whether the evidence necessary to prove that a defendant is guilty of a crime under the doctrine of acting in concert is the same evidence necessary to establish the aggravating factor that the defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy. Because the aggravating factor requires additional evidence beyond the evidence that is necessary to prove acting in concert, the trial

court properly submitted the aggravating factor to the jury in this case. Accordingly, we reverse the Court of Appeals on this issue.

Facts

The State presented evidence at trial tending to established the following facts. On 19 April 2010, David Andrews and Brian Rhode were both employed at a Chili's Restaurant in Durham, North Carolina. That afternoon, Andrews borrowed Rhode's red Ford Fusion to go buy crack cocaine. When Andrews ran out of money, he let other people use Rhode's car in exchange for crack. At some point, Andrews "rent[ed]" the car to a group of men that included defendant, Demetrius Lloyd, and Neiko Malloy. When the car was not returned at the agreed-upon time, Rhode's reported the vehicle as stolen.

At approximately noon on 20 April 2010, Pebbles Kersey walked out of her Durham apartment, located on Dearborn Drive, to go to her mailbox. As she was walking toward her mailbox, Kersey saw a red car pull up to the park across the street. Inside the car were three men, all wearing red bandanas over their faces. Jermaine Jackson, who was standing in the park, yelled at Kersey to "[g]et down," and Kersey saw a man in the backseat of the car fire a gun at Jackson.

Also around midday on 20 April 2010, Dennis Diaz, M.D., was waiting at the stoplight at the intersection of Old Oxford Road and Dearborn Drive when he saw Kersey "duck" to the ground. He immediately heard gunshots and noticed two men

leaning out of a car, both holding guns and shooting in Jackson's direction. After firing multiple shots, the men in the car fled the scene.

Jackson suffered a .38 caliber gunshot wound to his left jaw area and subsequently died as a result of the injury. Police recovered twelve bullet casings from the scene of the shooting. Eight casings were from nine-millimeter bullets and the other four were .38 caliber casings.

At approximately 12:30 p.m. on 20 April 2010, Rahjon Baldwin, the manager of an apartment complex on Gray Avenue in Durham, called the police to report a suspicious red Ford Fusion parked in the complex's parking lot. A group of three men were standing around the car and one of them was wiping the passenger side of the car with a T-shirt. When Baldwin approached the men and told them to move the red Ford, the men started walking away from the car toward the entrance of the apartment complex. A gray car then pulled into the parking lot and the three men attempted to get inside. However, the police officers responding to Baldwin's call arrived before the men could get inside the gray car. When the officers ordered the men to the ground, two of them ran away on foot. These two men were eventually apprehended, and all four men—defendant, Lloyd, Malloy, and a fourth man—were taken into custody.

Police searched the area around the red Ford Fusion and found a discarded T-shirt and a set of car keys that unlocked the car. When they searched the vehicle,

police found a nine-millimeter casing in the groove where the hood joins the front windshield on the passenger side. All four men were tested for gunshot residue. While no residue was found on defendant's hands, gunshot residue was found on his jeans.

Defendant was charged with first-degree murder and accessory after the fact to first-degree murder. The case was tried noncapitally, and the State gave notice of its intent to submit as an aggravating factor that "[t]he defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." At the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss the charges for insufficient evidence. The motions were denied. Defendant did not testify or put on any evidence.

Regarding the murder charge, the trial court instructed the jury on both first-degree and second-degree murder. The court instructed the jury that, with respect to either first-degree or second-degree murder, the jury could find defendant guilty if it determined that he acted alone or that he joined with one or more persons to commit the murder. The trial court also submitted an interrogatory on the verdict sheet asking the jury, assuming it found defendant guilty of either murder or accessory after the fact to murder:

> Do you find from the evidence beyond a reasonable doubt
> that the defendant joined with more than one other
> person in committing the offense for which you have
> unanimously found the [d]efendant guilty . . . and that the

> defendant was not charged with committing a conspiracy
> as to this offense?

The jury found defendant guilty of second-degree murder and answered the interrogatory affirmatively. The trial court found the existence of two mitigating factors, determined that the aggravating factor outweighed the mitigating factors, and concluded that an aggravated sentence was justified in this case. The trial court accordingly sentenced defendant to an aggravated-range term of 225 to 279 months imprisonment.

Defendant appealed his conviction and sentence to the Court of Appeals, arguing, among other things, that "the trial court erred in sentencing him in the aggravated range of sentences because the evidence supporting the aggravating factor was the same evidence necessary to support an element of the underlying offense." *State v. Facyson*, ___ N.C. App. ___, ___, 743 S.E.2d 252, 256 (2013). Defendant claimed that the jury necessarily convicted him of second-degree murder based on the theory of acting in concert due to the lack of evidence regarding who fired the bullet that killed Jackson. Defendant further contended that the evidence of his concerted action was the same evidence used to support the aggravating factor that he joined with more than one other person in committing the murder, but was not charged with committing a conspiracy. Thus, according to defendant, the use of this aggravating factor to enhance his sentence violated the prohibition in

N.C.G.S. § 15A-1340.16(d) against using evidence necessary to prove an element of the offense to also prove an aggravating factor. *Id.* at ___, 743 S.E.2d at 256-57.

The Court of Appeals held that the State presented evidence sufficient to permit the jury to find either that defendant acted in concert in committing the murder or that "it was defendant's actions alone that resulted in Jackson's death." *Id.* at ___,743 S.E.2d at 257. The court observed, however, that "the verdict sheet did not require the jury to indicate the theory on which it found defendant guilty." *Id.* at ___, 743 S.E.2d at 257. Resolving the ambiguity in the verdict sheet in favor of defendant, the court concluded, consistent with defendant's second premise, that it must "assum[e] that the aggravated sentence imposed was based on the same evidence necessary to establish an element of the underlying offense." *Id.* at ___, 743 S.E.2d at 257 (citation omitted). The court thus "reverse[d] the judgment entered upon [defendant's] conviction for second-degree murder and remand[ed] for a new sentencing hearing without the use of the aggravating factor." *Id.* at __, 743 S.E.2d at 257. We allowed the State's petition for discretionary review. ___ N.C. ___, 748 S.E.2d 317 (2013).

## Discussion

The State argues that the Court of Appeals erred in concluding that "when a defendant is guilty under the theory of acting in concert, the aggravating factor that he joined with more than one other person in committing the offense and was not

charged with conspiracy, may not be considered in determining the sentence." We agree.

Our Structured Sentencing Act provides that if the jury finds that one or more aggravating factors exist, and if the trial court determines that the aggravating factors outweigh the mitigating factors, then the court may impose a sentence in the statutorily-prescribed aggravated range. N.C.G.S. § 15A-1340.16(b) (2013). In determining whether an aggravating factor may properly be considered, section 15A-1340.16(d) dictates that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation." *Id.* § 15A-1340.16(d) (2013). In interpreting this provision, this Court has "emphasize[d] . . . that many of the statutory factors listed under [the predecessor to N.C.G.S. § 15A-1340.16(d)] contemplate a duplication in proof without violating the proscription that 'evidence necessary to prove an element of the offense may not be used to prove any factor in aggravation.' " *State v. Thompson*, 309 N.C. 421, 422 n.1, 307 S.E.2d 156, 158 n.1 (1983) (quoting N.C.G.S. § 15A-1340.4(a)(1), predecessor to N.C.G.S. § 15A-1340.16(d)).

We applied this principle in *State v. Bruton*, 344 N.C. 381, 385, 474 S.E.2d 336, 339-40 (1996), where the defendant (Townsend) was convicted of second-degree murder, under a concerted action theory, based on evidence that he and another man (Bruton) intentionally fired multiple shots at the victim and other individuals,

each using a nine-millimeter semiautomatic pistol. The defendant argued that the evidence used to prove the aggravating factor that he "knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person" was the same evidence used "to prove second-degree murder on the basis of acting in concert." *Bruton*, 344 N.C. at 393-94, 474 S.E.2d at 344-45. This Court rejected that argument, observing that, "[i]n meeting its burden of proof with respect to second-degree murder on the basis of acting in concert, the State was *not required to establish* that [the] defendant . . . knowingly created a great risk of death to more than one person or that he did so by using a weapon which in its normal use is hazardous to the lives of more than one person." *Id.* at 394, 474 S.E.2d at 345 (emphasis added). Thus, because the aggravating factor was supported by evidence "[d]iscrete" from the evidence necessary to establish defendant's acting in concert, the aggravating factor was properly submitted. *Id.*

In *Thompson*, 309 N.C. at 422, 307 S.E.2d at 158, we addressed the use of the aggravating factor that "[t]he offense involved an attempted or actual taking of property of great monetary value" when the underlying offense was felony larceny, which requires evidence that the value of the property taken exceeds a statutorily defined amount, *see* N.C.G.S. § 14-72(a) (2013). There, we observed that "simply because [the] defendant had been charged with larceny" did not preclude the use of evidence "establish[ing] an attempted taking of property of great monetary value":

"The *additional* evidence necessary to prove a taking or attempted taking of property of *great* monetary value is not evidence necessary to prove an element of felonious larceny." *Thompson*, 309 N.C. at 422, 307 S.E.2d at 158.

In *State v. Abee*, 308 N.C. 379, 380, 302 S.E.2d 230, 231 (1983) (per curiam), the defendant pleaded guilty to one count of second-degree sexual offense based on a single act of fellatio. The record, however, "clear[ly]" established that the defendant had committed multiple acts of fellatio, and the trial court considered these "repeated acts of fellatio" as a factor warranting enhancement of the defendant's sentence. *Id*. at 381, 302 S.E.2d at 231. We upheld the trial court's use of the aggravating factor because "[n]o proof of any other act of fellatio" was necessary to support the defendant's guilty plea. *Id*. Thus the remaining acts of fellatio could properly be considered as an aggravating factor because they were not the basis of the defendant's conviction. *Id*.

Finally, in *State v. Ahearn*, 307 N.C. 584, 602-03, 300 S.E.2d 689, 701 (1983), the defendant was convicted of felony child abuse under N.C.G.S. § 14-318.4(a), which required that the victim be "a child less than sixteen years of age." He argued that because the age of the victim is an element of the offense, the trial court was precluded from considering the aggravating factor that the victim was "very young." Id. at 602, 300 S.E.2d at 701. We rejected the defendant's contention, reasoning: "The age of the victim, while an element of the offense, spans sixteen

years, from birth to adolescence. . . . The fact that [the victim] was *very young* (24 months) was not an element necessary to prove felonious child abuse, and was therefore properly considered as an aggravating factor." *Id.* at 603, 300 S.E.2d at 701.

*Bruton*, *Thompson*, *Abee*, and *Ahearn* confirm that when an aggravating factor is established by evidence that is in addition to the evidence necessary to prove an element of the underlying offense, the aggravating factor may properly be considered under section 15A-1340.16(d). *Thompson*, 309 N.C. at 422, 307 S.E.2d at 158 (emphasis omitted). Applying this principle in this case, section 15A-1340.16(d)(2) provides that a defendant's sentence may be enhanced if "[t]he defendant joined with more than one other person in committing the offense and was not charged with committing a conspiracy." N.C.G.S. § 15A-1340.16(d)(2). Defendant argued, and the Court of Appeals held, that the evidence establishing this aggravating factor was the same evidence necessary to prove that defendant acted in concert in committing the murder. It is well established that under the doctrine of acting in concert, " 'when *two or more* persons act together in pursuance of a common plan or purpose, each is guilty of any crime committed by any other in pursuance of the common plan or purpose.' " *State v. Wilkerson*, 363 N.C. 382, 424, 683 S.E.2d 174, 200 (2009) (emphasis added) (quoting *State v. Thomas*, 325 N.C. 583, 595, 386 S.E.2d 555, 561 (1989)), *cert. denied*, 559 U.S. 1074, 130 S. Ct. 2104, 176 L. Ed. 2d 734 (2010).

Section 15A-1340.16(d)(2), in contrast, requires proof that "the defendant . . . joined *with at least two* other individuals in the commission of a crime." *State v. Hurt*, 359 N.C. 840, 843, 616 S.E.2d 910, 912 (2005) (emphasis added) (citation omitted), *vacated in part on other grounds*, 361 N.C. 325, 332, 643 S.E.2d 915, 919 (2007). Thus, by definition, while section 15A-1340.16(d)(2) requires evidence that the defendant joined with *at least two* other individuals to commit the offense, the doctrine of acting in concert only requires proof that the defendant joined with *at least one* other person. Accordingly, to echo our reasoning in *Bruton*, 344 N.C. at 394, 474 S.E.2d at 345, "[i]n meeting its burden of proof with respect to second-degree murder on the basis of acting in concert, the State was not required to establish" in this case that defendant joined with at least two other individuals in committing the murder—the State only needed to establish that defendant joined with one other person.

This, the State accomplished. Andrews testified that he "rented" his co-worker's red Ford Fusion to three men—defendant, Lloyd, and Malloy. That same car was seen by Kersey and Diaz at the scene of the shooting, with both witnesses reporting that multiple shots were fired from the vehicle at Jackson, the victim. Defendant, Lloyd, Malloy, and a fourth man were apprehended shortly after the shooting and one of them was attempting to wipe down the car.

Any evidence that defendant joined with more than one person was "additional evidence" unnecessary to prove that defendant acted in concert in committing the second-degree murder. *Thompson*, 309 N.C. at 422, 307 S.E.2d at 158 (emphasis omitted). Thus the evidence used to prove the aggravating factor in section 15A-1340.16(d)(2) is not the same evidence used to prove that defendant acted in concert. *See Bruton*, 344 N.C. at 394, 474 S.E.2d at 345 (upholding use of aggravating factor when the defendant's acting in concert and the aggravating factor were supported by "[d]iscrete evidence").

Moreover, in addition to evidence that the defendant joined with more than one other person in committing the offense, the plain language of section 15A-1340.16(d)(2) requires proof that the defendant "was not charged with committing a conspiracy." N.C.G.S. § 15A-1340.16(d)(2). This statutory requirement also is not an element of acting in concert. Defendant does not contend otherwise, arguing instead that "[t]he record [i]s silent on this element" and thus the State failed to meet its burden of proving the aggravating factor. The record establishes, however, that defendant conceded this point in his brief to the Court of Appeals when he acknowledged that "[n]o conspiracy charge was joined for trial in this case."

In sum, criminal culpability under the acting-in-concert doctrine does not require proof that "[t]he defendant joined with more than one other person in committing the offense" or that the defendant "was not charged with committing a

conspiracy" with respect to the underlying offense. *Id.* Consequently, the evidence presented by the State to support defendant's conviction for second-degree murder under an acting-in-concert theory is not the same evidence the State used to support the aggravating factor provided in section 15A-1340.16(d)(2). We, therefore, reverse that portion of the Court of Appeals' decision that reversed the trial court's judgment and remanded the case for resentencing. The remaining issues addressed by the Court of Appeals are not before this Court, and its decision as to those matters remains undisturbed.

REVERSED IN PART.