NO. COA13-1188

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.                                          Forsyth County
                                            No. 10 CRS 53412
JERROD STEPHON HILL,
        Defendant.


Appeal by defendant from judgments entered 9 August 2011 by Judge Mark E. Klass in Forsyth County Superior Court. Heard in the Court of Appeals 19 February 2014.


*Attorney General Roy Cooper, by Assistant Attorney General Nancy D. Hardison, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*


GEER, Judge.


Defendant Jerrod Stephon Hill appeals from his convictions of attempted robbery with a firearm and assault with a deadly weapon inflicting serious injury ("ADWISI"). The trial court sentenced defendant in the aggravated range based upon the jury's determination that two aggravating factors existed. On appeal, defendant makes several arguments regarding the sentencing phase of the trial. We agree with defendant that the trial court erred when it failed to hold a charge conference

prior to instructing the jury during the sentencing phase of the trial and, therefore, vacate defendant's judgment and remand for a new trial on sentencing.

## Facts

The State's evidence tended to show the following facts. On 16 March 2010, Howard Moore was with his friend Little Rick when Rick received a phone call from defendant. Defendant told Rick that he had a plan to rob Michael Dyer, defendant's friend from high school. According to the plan, defendant, Howard, and Rick would go to Mr. Dyer's house and Howard would ask to use his bathroom. Once they were inside, they would pin Mr. Dyer down and rob him. Defendant and his friend Jamal Smith had been to the house earlier that day and had seen Mr. Dyer sleeping on the couch.

A few minutes later, defendant and Jamal picked up Howard and Rick in a SUV driven by Jamal, and they headed to Mr. Dyer's house. On the way there, defendant showed Howard a .22 caliber rifle that he had wrapped in a black shirt.

The men arrived at Mr. Dyer's house around 1:00 p.m. Mr. Dyer saw the SUV pulling into his driveway and recognized defendant, who had been to his house a few months earlier to smoke marijuana. Mr. Dyer met defendant and Howard, whom Mr. Dyer did not recognize, at the door. Defendant asked Mr. Dyer

if Howard could use his bathroom, and Mr. Dyer let them inside. After showing Howard to the bathroom, Mr. Dyer heard someone behind him say, "Hey, homey." He turned around and saw Rick, whom he did not recognize, pointing a .22 caliber rifle at his head. Then, defendant punched Mr. Dyer in the face, blind-siding him. Howard came out of the bathroom, and Howard, defendant, and Rick began beating Mr. Dyer. Rick hit Mr. Dyer in the head with the butt of the rifle with such force that the rifle broke apart.

Mr. Dyer attempted to fight back, at one point throwing defendant over a chair. Mr. Dyer then pulled out a pocket knife and stabbed Howard in the side and in the buttock. At that point, defendant said "Oh, shit. White boy has a knife[,]" and defendant, Howard, and Rick ran out of the house. Mr. Dyer's mother arrived shortly thereafter and called 911. Mr. Dyer was hospitalized and required extensive medical treatment including surgery for a fractured orbital bone and cheek bone, and stitches for lacerations to his head and face. He continues to have problems with the vision in his right eye.

Police officers recovered from Mr. Dyer's house the broken pieces of the butt of the rifle used to beat Mr. Dyer, the knife used to stab Howard, a ski mask, a doo rag with Jamal's DNA on it, and defendant's cell phone. Police questioned Mr. Dyer, who

identified defendant as one of the suspects. Later that afternoon, police were alerted when Howard went to the hospital to seek treatment for his stab wounds. Howard was interviewed by police at the hospital, and, although he initially denied any knowledge of the incident, he eventually confessed to participating. Howard agreed to plead guilty to a charge of common law burglary in exchange for his testimony against defendant.

Defendant was indicted on 7 June 2010 for attempted robbery with a dangerous weapon, ADWISI, and assault inflicting serious bodily injury. On 6 July 2011, the State provided defendant with notice that it also intended to prove the following aggravating factors at trial: that defendant (1) induced others to participate in the commission of the offense or occupied a position of leadership or dominance of other participants in the commission of the offense, and (2) joined with more than one other person in committing the offense and was not charged with committing a conspiracy.

At trial, defendant testified in his own defense that on 16 March 2010, he was coming out of a corner store when he saw Rick and offered to pay Rick for a ride home. Howard, whom defendant did not know, was also in the car. As they were driving, Rick asked defendant if he knew where they could get some marijuana.

Defendant directed them to Mr. Dyer's house. When they got there, defendant and Howard met Mr. Dyer on the porch. Defendant asked Mr. Dyer if he had any weed, and Howard asked if he could use the bathroom. Mr. Dyer let them inside, and defendant and Mr. Dyer discussed marijuana while Howard went to the bathroom.

Defendant testified that Howard came out of the bathroom and blind-sided Mr. Dyer by punching him in the face. At the same time, Rick came in with a gun pointed at Mr. Dyer's face and said, "Give it up." Defendant stood there in shock at first while Howard and Rick began beating Mr. Dyer. Then, defendant tried to break up the fight. When Mr. Dyer stabbed Howard, defendant heard Rick yell, "White boy got a knife." Defendant ran out of the house, and as he was running down the driveway, Rick and Howard pulled up in the car and Rick told defendant, "Get your ass in the car." Defendant got in because Rick had a pistol in his lap, and he felt threatened. Defendant denied that he saw the rifle before the assault occurred, that he punched Mr. Dyer, or that he intended to rob him.

On cross-examination, the State asked defendant about his interview with Detective Rick Shelton of the Winston-Salem Police Department when he was first arrested. When the State asked if defendant told Detective Shelton that he only got into

the car because Rick threatened him with a pistol, defendant claimed that he did say that to Detective Shelton. Defendant also denied telling the detective initially that he did not know Mr. Dyer and then saying, "Oh, yeah, yeah, yeah. I saw Michael at a party on Sunday night in Clemmons where a fight broke out."

The State then called Detective Shelton as a rebuttal witness and played the videotaped recording of Detective Shelton's interview with defendant. Detective Shelton's testimony and the recording showed that defendant never told Detective Shelton that Rick threatened him with a pistol and revealed other inconsistencies in defendant's testimony.

At the close of all the evidence, the State voluntarily dismissed the charge of assault inflicting serious bodily injury. The jury found defendant guilty of attempted robbery with a dangerous weapon and ADWISI. The court then proceeded to the sentencing phase of the trial to allow the jury to render a verdict on the aggravating factors. Neither party presented additional evidence on the aggravating factors. After each side gave closing arguments, the court instructed the jury with respect to the aggravating factors. The jury returned a verdict finding that both aggravating factors were present.

Defendant did not argue that the trial court should find any mitigating factors, and the trial court sentenced him in the

aggravated range to a term of 100 to 129 months imprisonment for attempted robbery with a dangerous weapon and to a consecutive presumptive-range term of 26 to 41 months imprisonment for ADWISI. Defendant filed a petition for writ of certiorari on 24 January 2013, which this Court granted on 4 February 2013.

## Discussion

Defendant first argues that the trial court violated N.C. Gen. Stat. § 15A-1231(b) (2013) by failing to hold a charge conference prior to instructing the jury in the sentencing phase of the trial. Although defendant did not raise this issue at trial, he argues that this issue is preserved because "when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).

Defendant contends that holding a charge conference is a statutory mandate under N.C. Gen. Stat. § 15A-1231(b), which provides:

> Before the arguments to the jury, the judge must hold a recorded conference on instructions out of the presence of the jury. At the conference the judge must inform the parties of the offenses, lesser included offenses, and affirmative defenses on which he will charge the jury and must inform them of what, if any, parts of

tendered instructions will be given. A party is also entitled to be informed, upon request, whether the judge intends to include other particular instructions in his charge to the jury. The failure of the judge to comply fully with the provisions of this subsection does not constitute grounds for appeal unless his failure, not corrected prior to the end of the trial, materially prejudiced the case of the defendant.

With respect to whether holding a charge conference is a statutory mandate, this Court has noted that "'ordinarily, the word "must" and the word "shall," in a statute, are deemed to indicate a legislative intent to make the provision of the statute mandatory[.]'" *State v. Inman*, 174 N.C. App. 567, 570, 621 S.E.2d 306, 309 (2005) (quoting *State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 662 (1978)). Nevertheless, "'the legislative intent is to be derived from a consideration of the entire statute'" including "'the importance of the provision involved.'" *Id.* (quoting *House*, 295 N.C. at 203, 244 S.E.2d at 661, 662). "'Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory.'" *Id.* (quoting *House*, 295 N.C. at 203, 244 S.E.2d at 661-62).

The purpose of a charge conference is to allow the parties to discuss the proposed jury instructions to "insure that the

legal issues are appropriately clarified in a manner that assists the jury in understanding the case and in reaching the correct verdict," Irving Joyner, *Criminal Procedure in North Carolina* § 11.17 (3d ed. 2005), and "to enable counsel to know what instructions will be given so that counsel will be in a position to argue the facts in light of the law to be charged to the jury."

*State v. Wilson*, 354 N.C. 493, 524, 556 S.E.2d 272, 292 (2001) (Butterfield, J., concurring), *overruled on other grounds by State v. Millsaps*, 356 N.C. 556, 572 S.E.2d 767 (2002). After considering N.C. Gen. Stat. § 15A-1231(b) as a whole, including the importance of allowing the parties an opportunity to be heard regarding jury instructions and the use of the word "must," we conclude that holding a charge conference is mandatory, and a trial court's failure to do so is reviewable on appeal even in the absence of an objection at trial.

The State argues, however, that N.C. Gen. Stat. § 15A-1231(b) should not apply to trials regarding the existence of aggravating factors in non-capital cases. The State asserts that N.C. Gen. Stat. § 15A-1340.16(a1) (2013) sets forth all the procedural requirements for sentencing a defendant in the aggravated range and, because N.C. Gen. Stat. § 15A-1340.16(a1) does not specifically require the court to hold a separate

charge conference, the trial court was not required to do so. We disagree.

N.C. Gen. Stat. § 15A-1340.16(a1) provides, in pertinent part, that if the defendant does not admit to the existence of an aggravating factor, "only a jury may determine if an aggravating factor is present in an offense." The statute further provides:

> The jury impaneled for the trial of the felony may, in the same trial, also determine if one or more aggravating factors is present, unless the court determines that the interests of justice require that a separate sentencing proceeding be used to make that determination. If the court determines that a separate proceeding is required, the proceeding shall be conducted by the trial judge before the trial jury as soon as practicable after the guilty verdict is returned. . . . If the trial jury is unable to reconvene for a hearing on the issue of whether one or more aggravating factors exist after having determined the guilt of the accused, the trial judge shall impanel a new jury to determine the issue. A jury selected to determine whether one or more aggravating factors exist shall be selected in the same manner as juries are selected for the trial of criminal cases.

*Id.*

The statute goes on to address the procedure to be followed (1) when a defendant admits the aggravating factor, (2) when a defendant pleads guilty to the underlying felony but contests the existence of an aggravating factor, and (3) when the State

seeks to establish a prior record level point under N.C. Gen. Stat. § 15A-1340.14(b)(7) (2013). *See* N.C. Gen. Stat. § 15A-1340.16(a2), (a3), (a5). The statute also sets out requirements for pleading or giving notice of an intent to use aggravating factors or seek addition of prior record level points. *See* N.C. Gen. Stat. § 15A-1340.16(a4), (a5), (a6).

Nothing in the statute addresses the specifics of how the trial court should conduct a separate sentencing proceeding before the jury that decided the underlying felony charge or a separate sentencing proceeding before a newly empanelled jury. N.C. Gen. Stat. § 15A-1340.16 simply does not attempt to regulate how the trial court should conduct the sentencing proceedings, and we can glean no intent to mandate a different procedure than that which governs trials of criminal offenses. Accordingly, we hold that N.C. Gen. Stat. § 15A-1231 applies to sentencing proceedings under N.C. Gen. Stat. § 15A-1340.16(a1).

If, as occurred in this case, the trial court decides to hold a separate sentencing proceeding on aggravating factors as permitted by N.C. Gen. Stat. § 15A-1340.16(a1), and the parties did not address aggravating factors at the charge conference for the guilt-innocence phase of the trial, N.C. Gen. Stat. § 15A-1231 requires that the trial court hold a separate charge conference before instructing the jury as to the aggravating

factor issues. The trial court's failure to do so in this case was error.

We note, however, that N.C. Gen. Stat. § 15A-1231(b) (emphasis added) provides that "[t]he failure of the judge to comply *fully* with the provisions of this subsection does not constitute grounds for appeal unless his failure, not corrected prior to the end of the trial, materially prejudiced the case of the defendant." In this case, however, the trial court did not comply with N.C. Gen. Stat. § 15A-1231(b) at all.

This Court considered the failure to hold a charge conference under a prior version of N.C. Gen. Stat. § 15A-1231(b) in *State v. Clark*, 71 N.C. App. 55, 57, 322 S.E.2d 176, 177 (1984), *disapproved of on other grounds by State v. Moore*, 327 N.C. 378, 395 S.E.2d 124 (1990). That version included the same requirement of a showing of material prejudice if the trial court failed to "'fully'" comply with the requirement for a recorded charge conference. *Id.* (quoting N.C. Gen. Stat. § 15A-1231(b) (1983)). However, the 1983 statute only required a recorded charge conference if one of the parties requested it. *Id.*

In *Clark*, the Court held that because the defense counsel had requested a charge conference, the trial court was "mandated . . . to conduct a recorded instruction conference under G.S. §

15A-1231(b)." *Id.* at 58, 322 S.E.2d at 178. As in this case, the trial court, however, failed to hold any conference at all, recorded or otherwise. *Id.* Without requiring any showing of prejudice, this Court held "that the trial court's failure to hold a jury instruction conference requires a new trial." *Id.*

Under the current version of N.C. Gen. Stat. § 15A-1231(b), the trial court was mandated to hold a charge conference even without a request. Therefore, under *Clark*, the trial court's failure to hold the mandated conference "requires a new trial." 71 N.C. App. at 58, 322 S.E.2d at 178.

Even if *Clark* were not controlling, we hold that defendant has shown sufficient prejudice. Here, in addition to not holding a charge conference, the trial court, contrary to the General Rules of Practice, did not, following his charge to the jury, give counsel an opportunity to object to the charge. *See* Gen. R. Pract. Super. and Dist. Ct. 21 ("At the conclusion of the charge and before the jury begins its deliberations, and out of the hearing, or upon request, out of the presence of the jury, counsel shall be given the opportunity to object on the record to any portion of the charge, or omission therefrom[.]"). As a result, defense counsel was unable to have any input into the jury instructions at all.

Because of the importance of jury instructions, the role the charge conference plays in ensuring that the instructions are clear and correct and framed in the most effective way for a particular party, and the ambiguities and omissions in the instructions and verdict sheet that defendant has pointed out that could have been corrected during a charge conference, we believe that defendant has shown material prejudice. We, therefore, vacate defendant's judgment and remand for a new sentencing proceeding.

Given our disposition of this appeal, we need not address defendant's specific arguments regarding the instructions because they are unlikely to be repeated on remand. We do note, however, that while defendant has argued on appeal that the trial court erred in submitting the N.C. Gen. Stat. § 15A-1340.16(d)(2) aggravating factor when he was likely convicted of attempted armed robbery under an acting in concert theory, the Supreme Court has recently rejected that argument in *State v. Facyson*, ___ N.C. ___, ___, 758 S.E.2d 359, 364 (2014) (holding that because N.C. Gen. Stat. § 15A-1340.16(d)(2) requires evidence that defendant joined with at least two other people to commit the offense while acting in concert requires only one person, "[a]ny evidence that defendant joined with more than one person [is] 'additional evidence' unnecessary to prove that

defendant acted in concert in committing the [offense]" (quoting *State v. Thompson*, 309 N.C. 421, 422, 307 S.E.2d 156, 158 (1983)).

Vacated and remanded.

Judges ROBERT C. HUNTER and McCULLOUGH concur.