IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-737

Filed: 17 March 2020

Carteret County, Nos. 16 CRS 53232-33, 16 CRS 53235-36

STATE OF NORTH CAROLINA

v.

JEREMY WADE DEW, Defendant.

Appeal by defendant from judgments entered 7 February 2018 by Judge John Nobles in Carteret County Superior Court. Heard in the Court of Appeals 19 February 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney Generals Wes Saunders and Daniel P. O'Brien, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel K. Shatz, for defendant-appellant.*

BERGER, Judge.

Jeremy Wade Dew ("Defendant") was found guilty of kidnapping, two counts of assault with a deadly weapon inflicting serious injury ("AWDWISI"), one count of assault on a female, and one count of communicating threats. Defendant was sentenced to 75 to 102 months in prison. Defendant appeals, contending that the trial court erred when it (1) denied Defendant's motion to dismiss because the evidence before the trial court established only one assault that resulted in multiple injuries, not multiple assaults; (2) instructed the jury that Defendant's hands, feet,

and teeth could be deadly weapons; and (3) failed to conduct a charge conference. We find no error.

Factual and Procedural Background

On the weekend of July 29-31, 2016, Defendant and the victim traveled to Atlantic Beach, North Carolina for a vacation with the victim's parents. At the time, the victim and Defendant were in a relationship and lived together.

On July 30, 2016, Defendant took some form of pain medication, went to the liquor store, and began drinking. Later in the evening, Defendant obtained the victim's car keys, and stated that he was leaving to "get some cocaine and [expletive deleted]." Defendant drove off, and the victim went to a neighbor for help. By the time she got help, Defendant returned to the vacation home and locked the victim out.

When Defendant eventually allowed the victim inside, she went into the bedroom. Defendant hit the victim in the head while she was seated on the bed. Defendant continued to hit the victim with both his hands and fists while calling her a "slut." The victim did not defend herself because she had "never been through a situation like this before" and "was too scared to" hit Defendant. For about two hours, Defendant "punched [her] in the nose," "bit [her] ear and bit [her] nose," "kicked [her] in the chest," "head-butted [her] twice," and "strangled [her] until vomiting." The victim was unable to scream for help "[b]ecause at one point in time he had [her] face

down with [her] arms behind [her] back." The sheets to the bed were covered in the victim's blood, and the victim believed Defendant was going to kill her.

Defendant later forced the victim to get into her car. Defendant drove away from the vacation home. While driving, Defendant threw the victim's cell phone out the window and continued to strike her in the head, ultimately rupturing her eardrum. At various times throughout the drive, Defendant pulled off the road, strangled the victim, and threatened to push her out of the car.

Around 3:00 a.m. on July 31, 2016, they arrived at the victim's house in Sims, North Carolina. Defendant continued to threaten the victim and threatened to harm himself. At this time, the victim was in extreme pain as her head and body hurt, her ears were ringing, and her throat was sore.

Around 6:00 a.m. on July 31, 2016, the victim's mother called Defendant's phone. The victim answered and told her mother that she needed help. Her mother then discovered the blood-stained sheets in the vacation home. Soon after, the victim's sister came to the house in Sims, and the victim told her sister about what Defendant had done the night before.

The victim's sister called 911. When EMS arrived, they determined that the victim's nose was broken. She was transported to the emergency room where it was determined that the victim needed surgery to prevent further hearing loss.

The victim's parents arrived at the emergency room and later took her back to Atlantic Beach where she gave a statement to the Atlantic Beach Police Department. As of September 15, 2016, the victim was still "receiving medical care for [her] headaches and dizziness" and was suffering from anxiety and continued ear pain.

On August 1, 2016, Defendant was arrested. On February 5, 2018, Defendant was tried on the following offenses: (1) first degree kidnapping; (2) assault by strangulation; (3) AWDWISI;[1] (4) AWDWISI;[2] (5) assault on a female for kicking the victim in the chest; (6) assault on a female for head-butting the victim in the forehead; and (7) communicating threats. On February 7, 2018, a Carteret County jury found Defendant guilty of kidnapping, two counts of AWDWISI, one count of assault on a female for head-butting the victim in the forehead, and one count of communicating threats.

On February 8, 2018, Defendant entered written notice of appeal. Defendant argues on appeal that the trial court erred when it (1) denied Defendant's motion to dismiss because the evidence before the trial court established only one assault that resulted in multiple injuries, not multiple assaults; (2) instructed the jury that Defendant's hands, feet, and teeth could be deadly weapons; and (3) failed to conduct a charge conference. We disagree.

---

[1] The alleged deadly weapons for this assault were Defendant's hands and fists.
[2] The alleged deadly weapons for this assault were Defendant's hands, fists, and teeth.

Analysis

I. Motion to Dismiss

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). A motion to dismiss is properly denied if there is substantial evidence of (1) each element of the charged offense, and (2) defendant being the perpetrator of the charged offense. *See State v. Earnhardt*, 307 N.C. 62, 65, 296 S.E.2d 649, 651 (1982). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.

N.C. R. App. P. 10(a)(1). Further, "[t]his Court will not consider arguments based upon matters not presented to or adjudicated by the trial court. Even alleged errors arising under the Constitution of the United States are waived if defendant does not

raise them in the trial court." *State v. Haselden*, 357 N.C. 1, 10, 577 S.E.2d 594, 600

(2003) (citations and quotation marks omitted).

Here, Defendant argued at the close of the State's evidence:

> And then on the assault with a deadly weapon inflicting serious injury. Again, deadly weapon being the hands. We would argue that the case law seems to look at the size difference between the defendant and the victim, the brutality of the attack, what actually – the injuries that occurred.
>
> The State's evidence was that this was an ongoing assault that lasted for two hours within the trailer and then most of the ride home. And we would contend if those hands were deadly weapons as bad as those pictures are and as bad as her injuries are, that they would be a lot worse based on what the State's evidence has been and we would ask that that be – that the deadly weapon part of those be dismissed at this point.

Defendant then renewed his objection at the close of all of the evidence. Defendant

also argued at the close of all of the evidence that "the charging documents all put

the date of these incidents as July 31st," but did not include July 30th in the dates of

offense.

Defendant's arguments on his motion to dismiss for sufficiency of the evidence

were directed only to whether his hands could be considered deadly weapons given

what his attorney contended was insignificant evidence of injury, and that the bills

of information did not include the correct dates of offense. Defendant did not argue,

as he does in this appeal, that the evidence before the trial court established only one

assault that resulted in multiple injuries, not multiple assaults. Thus, Defendant has failed to preserve this argument for appellate review. *See State v. Harris*, 253 N.C. App. 322, 327, 800 S.E.2d 676, 680 (2017) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount in the [appellate court]." (citation and quotation marks omitted)).

Even if we assume Defendant preserved his new argument, the State presented sufficient evidence of each assault for which Defendant was convicted. "In order for a defendant to be charged with multiple counts of assault, there must be multiple assaults." *State v. McCoy*, 174 N.C. App. 105, 115, 620 S.E.2d 863, 871 (2005) (citation and quotation marks omitted). To establish that multiple assaults occurred, there must be "a distinct interruption in the original assault followed by a second assault[,] so that the subsequent assault may be deemed separate and distinct from the first." *State v. Littlejohn,* 158 N.C. App. 628, 635, 582 S.E.2d 301, 307 (2003) (*purgandum*). To determine whether Defendant's conduct was distinct, we are to consider: (1) whether each action required defendant to employ a separate thought process; (2) whether each act was distinct in time; and (3) whether each act resulted in a different outcome. *State v. Rambert*, 341 N.C. 173, 176-77, 459 S.E.2d 510, 513 (1995)

In *State v. Wilkes*, 225 N.C. App. 233, 736 S.E.2d 582 (2013), the defendant initially punched the victim in the face, breaking her nose, causing bruising to her

face, and damaging her teeth. The victim's son entered the room where the incident occurred with a baseball bat and hit the defendant. *Id.* at 235, 736 S.E.2d at 585. The defendant was able to secure the baseball bat from the child, and he began striking the victim with it. *Id.* at 235, 736 S.E.2d at 585. The defendant's actions in the subsequent assault "crushed two of [the victim]'s fingers, broke[] bones in her forearms and her hands, and cracked her skull." *Id.* at 235, 736 S.E.2d at 585.

This Court, citing our Supreme Court in *Rambert*, determined that there was not a single transaction, but rather "multiple transactions," stating, "[i]f the brief amount of thought required to pull a trigger again constitutes a separate thought process, then surely the amount of thought put into grabbing a bat from a twelve-year-old boy and then turning to use that bat in beating a woman constitutes a separate thought process." *Wilkes*, 225 N.C. App. at 239-40, 736 S.E.2d at 587.

In *State v. Harding*, 258 N.C. App. 306, 813 S.E.2d 254, 263, *writ denied, review denied,* 371 N.C. 450, 817 S.E.2d 205 (2018), this Court again applied the "separate-and-distinct-act analysis" from *Rambert*, and found multiple assaults "based on different conduct." *Id.* at 317, 813 S.E.2d at 263. There, the defendant "grabb[ed the victim] by her hair, toss[ed] her down the rocky embankment, and punch[ed] her face and head multiple times." *Id.* at 317, 813 S.E.2d at 263. The defendant also pinned down the victim and strangled her with his hands. This Court determined that multiple assaults had occurred because the "assaults required different thought

processes. Defendant's decisions to grab [the victim]'s hair, throw her down the embankment, and repeatedly punch her face and head required a separate thought process than his decision to pin down [the victim] while she was on the ground and strangle her throat to quiet her screaming." *Id.* at 317-18, 813 S.E.2d at 263. This Court also concluded that the assaults were distinct in time, and that the victim sustained injuries to different parts of her body because "[t]he evidence showed that [the victim] suffered two black eyes, injuries to her head, and bruises to her body, as well as pain in her neck and hoarseness in her voice from the strangulation." *Id.* at 318, 813 S.E.2d at 263.

In the present case, Defendant had to employ separate thought processes in his decisions to punch, slap, kick, bite, and head-butt the victim. In addition, the assaults which caused the victim's injuries did not occur simultaneously, with one strike, or in rapid succession. Rather, Defendant's actions were at separate and distinct points in time. Each assault also resulted in different injuries to the victim. The victim suffered a ruptured eardrum from Defendant's strikes on her ear, she suffered a concussion from the Defendant's conduct in head-butting her, she suffered a fractured nose from Defendant striking her nose, and she suffered permanent scarring from Defendant biting her nose and ear.

Even if Defendant preserved his argument, which he did not, the trial court did not err when it denied Defendant's motion to dismiss.

II. Motion to Dismiss AWDWISI

Defendant next argues that the trial court erred in denying Defendant's motion to dismiss AWDWISI because there was insufficient evidence that he used his hands, feet, and teeth as deadly weapons. We disagree.

"The elements of AWDWISI are: (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." *State v. Jones*, 353 N.C. 159,164, 538 S.E.2d 917, 922 (2000) (citation omitted). "A deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981) (citation omitted).

"An assailant's hands may be considered deadly weapons for the purpose of the crime of assault with a deadly weapon inflicting serious injury depending upon the manner in which they were used and the relative size and condition of the parties." *State v. Allen*, 193 N.C. App. 375, 378, 667 S.E.2d 295, 298 (2008). "Only where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly character is one of fact to be determined by the jury." *McCoy*, 174 N.C. App. at 112, 620 S.E.2d at 869 (citation and quotation marks omitted); *see also United States v. Sturgis*, 48 F.3d 784, 788 (4th Cir. 1995) ("The test of whether a particular object was used as a dangerous weapon is not so mechanical that it can be readily reduced to a

question of law. Rather, it must be left to the jury to determine whether, under the circumstances of each case, the defendant used some instrumentality, object, or (in some instances) a part of his body to cause death or serious injury. This test clearly invites a functional inquiry into the use of the instrument rather than a metaphysical reflection on its nature.").

In the present case, substantial evidence was presented at trial of Defendant's physical advantages over the victim. Defendant is approximately 5 feet 9 inches tall, while the victim is 5 feet 4 inches tall and weighs 140 pounds. Although there is no evidence in the record of Defendant's weight, Defendant was present at trial and the jury observed Defendant in person, along with photographs of Defendant from the incident that were admitted into evidence. Thus, the jury had the opportunity to observe the relative size differences of Defendant and the victim.

Moreover, on the night of the incident, the victim testified that Defendant had been drinking throughout the evening, that he was drunk, and that he was acting "crazed and possessed." For over two hours, Defendant struck the victim repeatedly with his hands and fists in her ear, nose, and head, which resulted in the victim sustaining two black eyes, a fractured nose, and swelling in her face. The victim believed that she was "going to die" and could not defend herself against Defendant because "he was stronger than her." According to the victim's sister, the victim "was unrecognizable . . . [and] she was a zombie" the next morning. It appeared to the

victim's sister that "[h]er eyes were swollen.  Her nose was very swollen and it looked like blood had come down to the tip.  She had a big old gash up here on her head.  Blood was in her hair.  I could tell her ears -- there was some blood on her ears."

Furthermore, Defendant bit the victim's nose and ear.  The victim testified that the bite to her ear was the most painful part of the attack.  The victim's doctors were more concerned about the bite marks on her ear than her ruptured eardrum.  At the time of trial, the victim had a visible scar from where Defendant bit her on the nose.

Moreover, the trial court provided the following instruction to the jury that "[i]n determining whether fists, hands, and teeth were a deadly weapon, you should *consider the nature of the fists, hands and teeth, the manner in which they were used,* and *the size and strength of the defendant as compared to the victim.*" (Emphasis added).

Thus, when viewed in a light most favorable to the State, we conclude that the State presented substantial evidence of each element of AWDWISI, and that Defendant's hands, feet, and teeth were deadly weapons for the purposes of AWDWISI.  Furthermore, we are reminded that the jury is the best determinant of whether, under the circumstances, Defendant's use of his hands, fists, and teeth were likely to cause death or serious bodily injury.  *See State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455-56 (2000)  ("When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury

consideration, not about the weight of the evidence."). Therefore, the trial court did not err when it denied Defendant's motion to dismiss.

III. <u>Charge Conference</u>

Defendant next argues that the trial court violated N.C. Gen. Stat. § 15A-1231(b) by failing to conduct a charge conference. We disagree.

A charge conference is a recorded conference between the judge and the parties outside the presence of the jury where the judge "must inform the parties of the offenses, lesser included offenses, and affirmative defenses on which he will charge the jury" and the judge must also inform the parties of what parts of the parties' tendered instructions will be given to the jury. N.C. Gen. Stat. § 15A-1231(b) (2019). "The purpose of a charge conference is to allow the parties to discuss the proposed jury instructions to insure that the legal issues are appropriately clarified in a manner that assists the jury in understanding the case and reaching the correct verdict." *State v. Houser*, 239 N.C. App. 410, 423, 768 S.E.2d 626, 635 (2015) (*purgandum*).

Mere noncompliance with Section 15A-1231(b) does not automatically entitle Defendant to relief. *State v. Corey*, ___ N.C. ___, ___, 835 S.E.2d 830, 838 (2019) (overruling *State v. Hill*, 235 N.C. App. 166, 760 S.E.2d 85 (2014)). Rather, a defendant must show that he or she was materially prejudiced by the judge's failure to fully comply with the provisions of Section 15A-1231(b). N.C. Gen. Stat. § 15A-

1231(b). A defendant is "materially prejudiced" for purposes of Section 15A-1231(b) "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2019); *Corey*, ___ N.C. at ___, 835 S.E.2d at 834; *State v. Coburn*, ___ N.C. App. ___, ___, 834 S.E.2d 691, 695 (2019) (concluding that the defendant was not materially prejudiced when portions of the charge conference were not recorded, as required by Section 15A-1231, because the trial court summarized, on the record, discussions that were not recorded; the defendant did not object to the trial court's summary of the jury instructions on the record; and the trial court was cognizant of the dangers of discussions held off the record).

The State correctly argues that Defendant could not have been materially prejudiced because a charge conference did *occur* as shown in the record. At the charge conference, the Court asked whether the parties were satisfied with the proposed jury instructions. Defendant stated that he was satisfied with the instructions to be given to the jury and had the opportunity to draft the proposed jury instructions, as evidence by the following colloquy which occurred outside the presence of the jury:

> THE COURT: All right. Thank you, sir. Give me one minute. I've got to look up an instruction before I bring the jury back in here. Not one you all did. It's one I've got to give before you all get started. (Pause.)

. . .

> [THE STATE]:      Is Your Honor satisfied with the jury instructions?
>
> THE COURT:      I'm satisfied with the jury instructions. I just kind of breezed through them, but I'm satisfied with them if you all are.
>
> [DEFENSE COUNSEL]: *We are, Your Honor.*
>
> THE COURT:  All right.  Now, listen, if I happen to misstate something or misread something, I want you to stop me right then, but I don't want you to -- just stand up and say may I approach the bench and then both of you all step up here and we'll address it.

(Emphasis added).  Furthermore, after the trial court instructed the jury, Defendant had a second opportunity to object to the instructions, as evidence by the following discussion:

> THE COURT:      All right.  For purposes of the record, Madam Court Reporter, both the defendant and the State agreed with the jury charge word-for-word.  There's no objection to it.
>
> [DEFENSE COUNSEL]: *No objection to any of it.*

(Emphasis added).

Thus, it is apparent from the record that Defendant participated in a charge conference, and he had multiple opportunities to object.  Because the trial court conducted a charge conference, the trial court did not err.  Therefore, Defendant cannot show material prejudice, and his argument is without merit.

Conclusion

Defendant received a fair trial, free from error.

NO ERROR.

Judges DILLON and ARROWOOD concur.